# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00692-CV

### In re John Edward Morris

### ORIGINAL PROCEEDING FROM COMAL COUNTY

### M E M O R A N D U M   O P I N I O N

Relator John Edward Morris filed a *pro se* petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221 (West Supp. 2010); *see also* Tex. R. App. P. 52. In the petition, Morris asks this Court to compel the Honorable Gary L. Steel, presiding judge of the 274th Judicial District Court of Comal County, to: (1) enter a *nunc pro tunc* judgment modifying Morris's judgment of conviction to award missing presentence jail time credit, and (2) grant his motion for specific performance of a term of his negotiated plea agreement. We deny the petition.

### BACKGROUND

On July 6, 2004, Comal County Sheriff Deputy Brett Smith responded to a dispatch call about a suspicious vehicle. On his way to meet with the complainant, Deputy Smith discovered the vehicle that was the subject of the call, an older model Ford pickup truck, and encountered John Edward Morris. The deputy made contact with Morris as he exited his truck. Morris assured the deputy that everything was okay, that he was just having car problems. Morris then returned to his truck and retrieved a shotgun. He advanced toward Deputy Smith pointing the weapon at him.

Deputy Smith pulled his service weapon and an exchange of gunfire ensued. The deputy was unharmed. Morris sustained three gunshot wounds. As a result, Morris was transported to a San Antonio hospital where he remained until he was eventually placed in the Comal County jail on a charge of attempted capital murder. Subsequent to being indicted for that offense, Morris entered a plea of *nolo contendere* to the lesser-included offense of aggravated assault on a peace officer with a deadly weapon pursuant to a plea bargain.[1] Pursuant to the plea bargain, Morris was sentenced to 30 years in the Texas Department of Criminal Justice.

## MANDAMUS STANDARD

To be entitled to mandamus relief in a criminal case, a relator must establish that: (1) he has no other adequate legal remedy to redress the alleged harm, and (2) under the relevant facts and law, the act sought to be compelled is purely ministerial, not involving a discretionary or judicial decision. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding); *State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 927 (Tex. Crim. App. 2001) (orig. proceeding). An act is ministerial if it does not involve the exercise of any discretion and the relator has a clear right to relief. *State ex rel. Hill*, 34 S.W.3d at 927; *In re Daisy*, 156 S.W.3d 922, 924 (Tex. App.—Dallas 2005, orig. proceeding). The relief sought must be clear and indisputable, such that its merits are beyond dispute. *See State ex rel. Hill*, 34 S.W.3d at 927-28; *Daisy*, 156 S.W.3d at 924.

---

[1] The actual penal code offense under section 22.02 of the Texas Penal Code is aggravated assault against a public servant. Tex. Penal Code Ann. § 22.02 (b)(2)(B) (West 2011). A peace officer is a public servant. *Id*. §§ 1.07(a)(36), (41)(A).

## DISCUSSION

### A. Jail Time Credit

Subsequent to the filing of his petition for writ of mandamus, Morris filed a supplemental record containing a file-marked copy of the trial court's *Nunc Pro Tunc* Judgment of Conviction. This judgment reflects that the trial court granted Morris the jail time credit he was requesting. Therefore, because Morris has already received the relief he now seeks through mandamus, this portion of his petition is moot.[2]

### B. Specific Performance

In his petition, Morris complains that the trial court has failed to grant his motion for specific performance to enforce the negotiated plea agreement. He contends that the trial court has a ministerial duty to enforce the terms of the plea-bargain agreement and asks this Court to order the trial court to issue orders to enforce the "out-of-state physical custody term" that he claims was part of the plea agreement.

#### 1. Plea Bargains

A plea bargain is a contractual arrangement between the State and the defendant. *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009); *Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001); *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996). When a trial court gives express approval for a plea agreement, it binds all necessary parties

---

[2] We have received a copy of a district court order purporting to deny and dismiss as moot this petition for writ of mandamus because the court had issued a *nunc pro tunc* judgment granting Morris the jail time he seeks in this petition. However, as the Respondent, the district court does not have the authority to deny or dismiss the instant petition.

3

to the agreement—the defendant, the State, and the court—to a contract. *Bitterman v. State*, 180 S.W.3d 139, 142 (Tex. Crim. App. 2005); *Ortiz*, 933 S.W.2d at 104; *Wright v. State*, 158 S.W.3d 590, 593-94 (Tex. App.—San Antonio 2005, pet. ref'd).

Thus, once a trial court has accepted a plea agreement, it has a "ministerial, mandatory, and non-discretionary duty" to enforce the plea bargain it approves. *Perkins v. Court of Appeals for the Third Supreme Judicial Dist.*, 738 S.W.2d 276, 284-85 (Tex. Crim. App. 1987); *Wright*, 158 S.W.3d at 595; *In re Gooch*, 153 S.W.3d 690, 694 (Tex. App.—Tyler 2005, orig. proceeding) (mandamus relief granted when trial court violated mandatory duty to enforce plea-bargain agreement). Further, once approved by the trial court, the defendant may insist on the benefit of his plea agreement with the State. *Blanco v. State*, 18 S.W.3d 218, 220 (Tex. Crim. App. 2000); *see Bitterman*, 180 S.W.3d at 142-43; *Wright*, 158 S.W.3d at 593-94. If such agreement with the State can be enforced, the defendant is entitled to seek specific performance of the plea agreement; if the agreement cannot be enforced, the defendant is entitled to withdraw his plea. *Bitterman*, 180 S.W.3d at 143; *Perkins*, 738 S.W.2d at 283-284; *Wright*, 158 S.W.3d at 594.

General contract law principles apply to the review of issues involving the content of a plea agreement in a criminal case. *Moussazadeh*, 64 S.W. 3d at 411; *Brunelle v. State*, 113 S.W.3d 788, 790 (Tex. App.—Tyler 2003, no pet.); *Smith v. State*, 84 S.W.3d 36, 40 (Tex. App.—Texarkana 2002, no pet.). Thus, we look to the written plea agreement, as well as the formal record of the plea proceedings, to determine the terms of the plea agreement and discern the obligations of the parties. *See Moussazadeh*, 64 S.W. 3d at 411-12; *Costilow v. State*, 318 S.W.3d 534, 537 (Tex. App.—Beaumont 2010, no pet.); *see also Sun Oil Co. v. Madeley*,

4

626 S.W.2d 726, 728 (Tex. 1981); *Danciger Oil & Ref. Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941). Any finding that a particular plea-bargain term formed an essential part of the plea agreement must be founded upon the express terms of the written plea agreement itself, the formal record of the plea hearing, or the written or testimonial evidence submitted by both the prosecution and applicant in a habeas corpus proceeding. *See Moussazadeh*, 64 S.W.3d at 412.

We look beyond the written agreement or record and imply a covenant or term only when necessary "to effectuate the intention of the parties as disclosed by the contract as a whole." *Moussazadeh*, 64 S.W.3d at 411 (quoting *Danciger*, 154 S.W.2d at 635); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998). An implied covenant or term is sufficiently necessary to the parties' intentions only if the obligation "was so clearly within the contemplation of the parties that they deemed it unnecessary to express … ." *Moussazadeh*, 64 S.W.3d at 411 (quoting *Danciger*, 154 S.W.2d at 635). We will not imply a term unless it appears from the plea agreement's express terms that both parties clearly contemplated this element or covenant. *See Moussazadeh*, 64 S.W.3d at 411-12; *HECI*, 982 S.W.2d at 888; *see also In re Bass*, 113 S.W.3d 435, 743 (Tex. 2003) (implied covenants not favored by law and will not be read into contracts except as legally necessary to effectuate plain, clear, unmistakable intent of parties).

### 2. The Plea Bargain

On February 15, 2007, Morris entered a plea of *nolo contendere* to the lesser-included offense of aggravated assault on a peace officer with a deadly weapon pursuant to a plea bargain. In exchange for the no-contest plea, the State recommended a sentence of 28 years in the Texas Department of Criminal Justice. The State also indicated on the record that it had no objection to

5

the sentence running concurrent with any sentence Morris might receive on his Colorado offenses.[3]

In accepting the plea and discussing the possibility of concurrent sentences, the trial judge clearly explained—and made sure that Morris understood—that the plea bargain was not binding on Colorado because the trial court did not have authority to bind Colorado authorities. Morris stated that he understood. There was no mention in open court at the time of the plea of Morris's serving his Texas sentence in Colorado, although the plea paperwork stated that the State did not object to Morris serving his time in Colorado.

At the sentencing hearing on April 12, 2007, after the trial court indicated that it was going to reject the original plea bargain, Morris again entered a plea of *nolo contendere* to the lesser-included offense of aggravated assault on a peace officer with a deadly weapon, along with a plea of true to the deadly weapon allegation pursuant to a modified plea bargain.[4] The only change in the plea bargain was confinement for 30 years in the Texas Department of Criminal Justice instead of 28 years. During the sentencing, the trial court again explained to Morris that the Colorado authorities were not bound by any actions taken by the trial court. Morris again communicated his understanding.

---

[3] The record reflects that Morris had multiple felony charges pending in Clear Creek County, Colorado—second degree assault, second degree kidnapping, and aggravated robbery—relating to the kidnapping and assault of a woman, as well as multiple felony charges pending in Garfield County, Colorado—five felony counts of menacing with a deadly weapon for threatening five individuals with a knife and one charge of child abuse.

[4] The record reflects that the Honorable Jack Robison was the district judge who presided over the plea hearing and accepted Morris's no contest plea, but the Honorable Gary L. Steel was the district judge who presided over the sentencing hearing and accepted the modified plea bargain.

### 3. No "Out-of-State Physical Custody" Term

Upon review of the record and applying general contract law principles, we find that Morris is not entitled to specific performance. While Morris is entitled to have his plea bargain enforced, the plea-bargain agreement between Morris and the State in this case did not include an agreement that Morris would serve his Texas penitentiary sentence in the Colorado Department of Corrections. Contrary to Morris's claim, there was no "out-of-state physical custody" term in the plea agreement.

The record shows that Morris entered into a plea bargain with the State where he agreed to plead no contest to the lesser-included offense of aggravated assault with a deadly weapon in exchange for the State's recommendation of a prison term of 30 years in the Texas Department of Criminal Justice. Morris's plea-bargain agreement with the State is set out on a standardized form entitled *Negotiated Plea, Guilty Plea Memorandum*.[5] The agreement concerning his pending criminal charges in Colorado was addressed in a section entitled "[o]ther punishment recommendations." Specifically, the plea paperwork contained the following notations:

> "THE STATE DOES NOT OBJECT TO ANY CHARGES ARISING PRIOR TO THE DATE OF THIS OFFENSE BEING SENTENCED SO AS TO RUN CONCURRENT WITH THIS SENTENCE SHOULD THE JURISDICTIONS IN SUCH OTHER CASES CHOOSE TO DO SO. STATE DOES NOT OBJECT TO [THE DEFENDANT] DOING HIS TIME IN COLORADO."

---

[5] The memorandum admitted as State's Exhibit 1 at the plea hearing reflects the initial 28-year sentence. Apparently, the paperwork was not changed when the plea agreement was subsequently modified.

These statements were hand-written and initialed by the District Attorney. There is no other mention or reference to Morris's Colorado charges in the plea paperwork. The record shows that Morris initialed each page of the plea memorandum and signed this written plea agreement.

During the plea hearing, the trial court admonished Morris regarding the court's authority, or lack thereof, to affect the Colorado authorities. When discussing the sentence in the instant case running concurrently with any Colorado sentence, the trial court explicitly informed Morris that the plea bargain was not binding upon Colorado because he "wouldn't have any right to bind Colorado, for sure." Morris indicated that he understood the limitations on the court's authority. There was no verbal mention whatsoever of Morris serving his Texas sentence in Colorado at the time of the plea. Thus, when the trial court accepted the plea-bargain agreement, the only agreement concerning Morris's Colorado charges was that: (1) the State would not object to the Texas sentence running concurrently with any future Colorado sentence, and (2) the State would not object to Morris serving the Texas sentence in Colorado. There was no agreement that Morris *would* serve his sentence in Colorado, only that the State would not object to such.[6]

At the sentencing hearing, the plea-bargain agreement was modified as to the length of confinement but was not otherwise altered. Thus, the agreement concerning Morris's Colorado charges was unchanged and remained only that: (1) the State would not object to concurrent sentences, and (2) the State would not object to the Texas sentence being served in Colorado. In addressing the possibility of concurrent sentences, the trial court once again explained his lack of

---

[6] In fact, the trial court would have no authority to order the Colorado Department of Corrections to accept and house a Texas inmate. *See, e.g.*, *Ex parte Young*, 684 S.W.2d 704, 707 (Tex. Crim. App. 1985) (Onion, P. J., dissenting).

8

authority over Colorado authorities and explicitly reminded Morris that Colorado had not entered into any agreement with Texas concerning Morris's charges. The judge admonished Morris that the actions of the trial court regarding his Texas sentence "ha[d] zero affect [sic] on what happens in Colorado." Once again Morris indicated that he understood.

In addressing the issue of Morris serving his Texas sentence in Colorado, the trial court expressed during the sentencing hearing that it had "no interest" in Morris serving his time in Texas or Colorado "as long as he's in a penitentiary somewhere, I have no interest."[7] However, there was no express agreement that Morris would serve his Texas sentence in Colorado. Such an agreement was not contained in the plea-bargain agreement, nor did, or could, the trial court's comment create such a term. *See Moore*, 295 S.W.3d at 332 (plea-bargain agreement is solely between State and defendant so only State and defendant may alter terms of agreement; trial court commits error if it unilaterally adds un-negotiated terms to plea-bargain agreement); *Costilow*, 318 S.W.3d at 537 (role of trial judge is to follow or reject plea agreement, not to modify its terms); *see also* Tex. Code Crim. Proc. Ann. art. 26.13(a)(2) (West Supp. 2010). The instant plea-bargain agreement involved only the agreement that the State would not object to Morris's serving his Texas sentence in Colorado, not an agreement that Morris would serve his Texas time in Colorado. That is the agreement that both the plea paperwork and the record of the plea proceedings reflect.

---

[7] Although not entirely clear from the record, some of the trial court's remarks could be construed as suggesting that serving the Texas time in Colorado was part of the plea agreement. However, to the extent the court's remarks are construed in this way, the trial court appears to have misspoken, as the plea paperwork did not contain any provision for Morris to serve his Texas sentence in Colorado. The plea agreement simply involved the State not objecting to Morris serving his time in Colorado.

Morris acknowledges that the express plea agreement only involved the State's "non-objection," but he contends that this "non-objection" clause does not clearly express the State's intent, or his expectation. He argues that there was an implied promise of an interstate transfer to the Colorado Department of Corrections and that the plea agreement contract is ambiguous as to this purported term of the plea agreement. We disagree. The plea-bargain memorandum and the record of the plea hearing both clearly reflect the terms of the plea-bargain agreement. These terms did not include an agreement that Morris would serve his time in Colorado or that the State would arrange for or facilitate Morris's transfer to the Colorado penitentiary. They only included an agreement that the State would not object to Morris serving his Texas time in Colorado. The record reflects that the State fulfilled its part of the agreement by explicitly stating in the plea paperwork that "the State does not object to [the defendant] doing his time in Colorado."[8] Morris may not enforce specific performance of a term not appearing in the written plea agreement document or the record. *See Ex parte Williams*, 758 S.W.2d 785, 786 (Tex. Crim. App. 1988).

This Court cannot discern any "out-of-state physical custody" agreement—either explicit or implicit—from this record. The negotiated plea-bargain agreement included a "no

---

[8] Morris argues that "the State" is attempting to avoid its obligation of the "'no[n] object[ion]' to the out-of state physical custody term" because the Texas Department of Criminal Justice (TDCJ) has denied his request for an interstate transfer. The State of Texas is represented in criminal prosecutions by the local district attorney, whereas TDCJ is the state agency responsible for the incarceration of criminal offenders. Morris argues, but cites no authority for his proposition, that the administrative decisions of TDCJ should be controlled by the plea-bargain agreement of the local prosecutor. Because we find that no "out-of-state physical custody" term was part of the plea-bargain agreement, we do not address this contention other than to note that the local prosecutor acting on behalf of the people of the state of Texas in a criminal proceeding is not the same as a state agency executing the administrative power of the state. *See State v. Brabson*, 976 S.W.2d 182, 186-87 (Tex. Crim. App. 1985) (Womack, J., concurring).

objection to out-of-state custody" term, not an "out-of-state physical custody" term. Thus, Morris is asking for specific performance of a term not part of the plea-bargain agreement to which he is not entitled.

## CONCLUSION

Morris has already received the jail time credit he seeks and is not entitled to the specific performance he requests. Accordingly, we deny his mandamus petition.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Denied

Filed: December 29, 2011